Esther ANZALDUA, Appellant,

v.

AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY, Appellee.

No. B2253.

Court of Civil Appeals of Texas, Houston (14th Dist.).

Feb. 13, 1980.

Rehearing Denied March 5, 1980.

Stevens F. Mafrige, Ronald J. Kormanik, Houston, for appellant.

Ann Tyrell Cochran, Vinson & Elkins, Houston, for appellee.

Before COULSON, SALAZAR and JUNELL, JJ.

COULSON, Justice.

This is a worker's compensation case. Appellant Esther Anzaldua (Anzaldua) was an employee of a restaurant whose compensation carrier was appellee American Guarantee & Liability Insurance Company (American). On October 15, 1976 Anzaldua was injured on the job when she slipped and fell. Anzaldua rejected the final award of the Texas Industrial Accident Board and filed suit against American. After a jury trial, judgment was entered awarding Anzaldua $576.16 for partial incapacity from October 15, 1976 to May 10, 1977, and $2,050.00 for medical and hospital expenses incurred as a result of her injury. Anzaldua appeals from that judgment. We affirm.

Appellant's first point of error complains that the jury's award for necessary and reasonable medical expenses was against the great weight and preponderance of the evidence or, alternatively, supported by no evidence. Appellant contends that subsequent to her injury she had unrefuted medical bills totaling $6,201.20 which were admitted into evidence. Since the jury awarded her only $2,050.00 for medical and hospital bills, appellant argues that the jury disregarded the evidence and arbitrarily set a figure for medical expenses. The jury found that appellant was partially incapacitated as a result of her fall and that such incapacity ended on May 10, 1977. Additionally, there was evidence which the jury was entitled to consider tending to establish that any medical expenses incurred after May 10, 1977 were not reasonably necessitated by appellant's work-related injury. The majority of the medical bills admitted into evidence at trial were incurred after May 10, 1977 and less than $2,050.00 were incurred prior to May 10, 1977. Therefore, if there is error in the jury award for medical and hospital expenses, the error is that the damages awarded include costs not reasonably necessitated by appellant's work-related injury and are, therefore, excessive. Appellee asserts no counter-point claiming excessiveness. The award is affirmed.

Appellant's second point of error complains that the trial court erred in admitting into evidence certain medical reports (defendant's exhibits 1, 2, 3 and 4) over her objection that the reports contained hearsay and diagnostic statements and that appellant had no opportunity to cross-examine the authors of the reports. For the following reasons, appellant's complaints are overruled. Dr. Bachynsky, appellant's medical witness, stated in his direct testimony that in forming his opinions about appellant's present and future physical condition he relied on three letters from the surgeon who operated on Anzaldua de-

tailing her post-surgical progress. The three letters were admitted as defendant's exhibits 1, 2 and 3 as a part of appellee's permissible cross-examination of Dr. Bachynsky. Thus, the situation is analogous to the use of authoritative treatises, books and articles, and it was entirely appropriate that the reports be admitted into evidence and that appellee's attorney be allowed to cross-examine Dr. Bachynsky concerning the reports. *Moore v. Standard Fire Insurance Company*, 461 S.W.2d 213, 214 (Tex. Civ.App.–Amarillo 1970, writ ref'd n.r.e.); J. Perdue, the Law of Texas Medical Malpractice 139 (1975).

■ Defendant's exhibit 4 was the report of an initial examination made two days after Anzaldua's injury. The report indicated that Anzaldua's complaint was that she hurt her wrist and arm at work. An x-ray was taken, and no fracture or dislocation was found. Appellant complains that the exhibit was inadmissible under *Loper v. Andrews*, 404 S.W.2d 300 (Tex.1966) because it contained medical opinions upon which experts would normally disagree. However, nothing contained in defendant's exhibit 4 indicated ". . . a condition or diagnosis upon which competent doctors would likely disagree, at least in methods or theory." *Eubanks v. Winn*, 469 S.W.2d 292, 296 (Tex.Civ.App.–Houston [14th Dist.] 1971, writ ref'd n.r.e.). The diagnosis in the report concerning Anzaldua's wrist and arm was different from Dr. Bachynsky's diagnosis concerning her back and head, but, from the record, it appears that the complaints the doctors received from Anzaldua were different. That type of difference is not the kind discussed in *Eubanks* or in *Loper*. There was no need here to disprove what the entries in defendant's exhibit 4 tended to establish. Under *Otis Elevator Company v. Wood*, 436 S.W.2d 324 (Tex.1968) the exhibits were properly admitted.

■ Appellant's third point of error complains that the trial court erred in giving the jury a supplemental charge because such charge was coercive. The supplemental charge given was as follows:

Members of the Jury:

I have your note that you are deadlocked. You request further instructions. This case has been ably tried, and in the interest of justice, if you could end this litigation by your verdict, you should do so.

I don't mean to say by that that any individual person on the jury should yield his own conscience and positive conviction, but I do mean that when you are in the jury room, you should discuss this matter among yourselves carefully and listen to each other, and try, if you can, to reach a conclusion on the issues. It is the duty of jurors to keep their minds open and free to every reasonable argument that may be presented by fellow jurors that they may arrive at the verdict which justly answers the consciences of the individuals making up the jury. A juryman should not have any pride of opinion, and should avoid hastily forming or expressing an opinion. He should not surrender any conscientious views founded upon the evidence unless convinced by his fellow jurors of his error.

I am satisfied, ladies and gentlemen, that you have not deliberated sufficiently. Accordingly, I return you to your deliberations.

The leading authority dealing with possibly coercive supplemental charges is *Stevens v. Travelers Ins. Co.*, 563 S.W.2d 223 (Tex. 1978). In *Stevens*, the supreme court reviewed the circumstances surrounding the giving of the supplemental charge to the jury, but that review occurred only after the court had determined ". . . a portion of the charge to be possibly coercive when standing alone . . . ." 563 S.W.2d at 232. The charge in the instant case, however, has no element of coerciveness on its face. The trial judge eliminated those portions of the *Stevens* charge which the supreme court had found to be offensive. We hold that the supplemental charge given here was not coercive and thus, no error resulted from its being given.

■ Appellant's fourth point of error complains that the jury failed to follow the court's instruction and find a reduction in

wage earning capacity during the time appellant was found to be partially incapacitated. Appellant's contention is in error. Tex.Rev.Civ.Stat.Ann. art. 8309, § 1(1) (Vernon 1967) specifies that the average weekly wage of an employee who had worked at least two hundred ten (210) days of the year immediately preceding the injury is the average daily wage multiplied by three hundred (300) and divided by fifty-two (52). The jury found appellant's average daily wage before her injury to be $38.00. Applying the statutory formula, her average weekly wage was $219.23. The jury found her average weekly earning capacity during the period of her partial incapacity to have been $190.00. Thus, a reduction of earning capacity of $29.23 per week was found. Appellant has shown no reason why the statutory formula should not have been applied. The jury's verdict, when applied to the statutory formula, gave a reduction in earning capacity. Thus, the court's instruction was complied with, and appellant's fourth point of error is overruled.

■ Appellant's fifth point of error complains that the jury's answers to Special Issues No. 3, 4b and 6a are in fatal conflict. Such is not the case. Special Issue No. 3 inquired if the injury was a producing cause of any total incapacity, to which the jury answered "No." Special Issue No. 4b found May 10, 1977 to be the ending date of appellant's partial incapacity, and Special Issue No. 6a awarded appellant $2,050.00 for medical care. These answers are not in conflict and are all consistent with the finding that appellant was injured on the job, but that her injury resulted only in a partial incapacity which ended on May 10, 1977 and for which $2,050.00 would adequately compensate appellant for medical care necessitated by her injury. Therefore, appellant's fifth point of error is overruled.

■ Finally, appellant complains that the jury verdict is supported by no evidence, or alternatively, that it is against the great weight and preponderance of the evidence. There is evidence in this record to support a jury finding of partial incapacity with a termination date of May 10, 1977. The jury apparently believed that appellant's back surgery was not necessitated by her on-the-job injury and thus found her job-related incapacity to have ended when she became the patient of the doctor who ultimately recommended back surgery. There was more than a scintilla of evidence to support this finding as is required by *Joske v. Irvine*, 91 Tex. 574, 44 S.W. 1059 (1898). Neither are the findings of the jury, considering all of the evidence, so against the great weight and preponderance of the evidence as to be manifestly unjust.

All of appellant's points of error have been considered and are overruled.

Affirmed.